UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELANA FINDLEY,<br>*on behalf of herself and those similarly situated,*<br><br>                    Plaintiff,<br><br>          vs.<br><br>THE LAW OFFICES OF ROBERT J. COLCLOUGH, III;<br>ROBERT J. COLCLOUGH, III;<br>JORGE DE LEON;<br>ALLIED COLLECTION SERVICES OF CALIFORNIA, LLC; and<br>JOHN DOES 1 to 10,<br><br>                    Defendants. | Civil Action No.<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Melana Findley, individually and on behalf of all others similarly situated, by way of Class Action Complaint against Defendants, The Law Offices of Robert J. Colclough, III; Robert J. Colclough, III; Jorge De Leon; and Allied Collection Services of California, LLC, (including John Does 1 to 10) states:

### I.     NATURE OF THE ACTION

1.     This action for damages arises from Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

### II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.     Venue in this action properly lies in the District Court of Pennsylvania, Eastern District.

### III. PARTIES

4. Plaintiff, Melana Findley ("Plaintiff" or "Findley"), is a natural person.

5. At all times relevant to this lawsuit, Plaintiff was a citizen of the Commonwealth of Pennsylvania and resided in Montgomery County, Pennsylvania.

6. Defendant, The Law Offices of Robert J. Colclough, III., ("Colclough") is a debt collection law firm based out of California with its principal place of business located at 9301 Oakdale Avenue, Suite 205, Chatsworth, California 91311. Colclough regularly collects upon consumers located in the Commonwealth of Pennsylvania.

7. Defendant, Allied Collection Services of California, LLC, ("Allied") is a limited liability company organized under the laws of the State of California with its principal place of business located at 9301 Oakdale Avenue, Suite 205, Chatsworth, California 91311.

8. Defendant, Robert J. Colclough, III, at all times relevant hereto, is a principal owner, officer, director, shareholder, and/or managing partner of Colclough, personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of Colclough complained of herein.

9. Defendant, Jorge De Leon, at all times relevant hereto, is a principal owner, officer, director, shareholder, and/or managing partner of Colclough, personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of Colclough complained of herein.

10. Plaintiff is informed and believe, and on that basis alleges, that Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within

the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

## IV.    FACTS

### A. Background and Business Model

11.    Defendants are not in the business of extending credit, selling goods or services to consumers.

12.    Defendants regularly collect or attempt to collect debts that are past due.

13.    Defendants regularly collect or attempt to collect debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

14.    Defendants are in the business of collecting debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

15.    Defendants use the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

16.    Defendants have asserted that Plaintiff allegedly incurred or owed a certain financial obligation arising out of Northrop Grumman Federal Credit Union account ("Debt" or "Account").

17. The Debt arose from one or more transactions which were primarily for Plaintiff's personal, family or household purposes.

18. The Account was transferred, referred, assigned and/or purchased by Defendants for collection.

19. At all times relevant hereto, Defendants acted in concert in attempts to collect the Debt.

20. Defendants contend that the Account is past due and in default.

21. The Account was past due and in default at the time it was placed with or assigned to Defendants for collection.

22. In an attempt to collect the Debt, Defendants mailed a collection letter to Plaintiff on June 7, 2019 (the "Letter").

23. A true copy of the Letter, but with redactions for privacy, is attached as **Exhibit A**.

24. Plaintiff received and reviewed the Letter.

**B. Exposure of Personal Identifying Information**

25. The Letter was mailed in an envelope with transparent windows.

26. Being sent in a window envelope, the "Account No." was visible through the window of the envelope.

27. Through the window of the envelope, the exact "Account No." is visible.

28. Anyone can easily read and obtain Plaintiff's personal account number.

29. The account number exposed personal identifying information and the disclosure has the potential to cause harm to the consumer.

30. Defendants could have easily taken measures to prevent the account numbers from being visible through the window envelopes but chose not to do so.

31. Defendants intentionally and recklessly disclosed Plaintiff's personal identifying information to the public.

32. The FDCPA prohibits a debt collector from "[u]sing **any language or symbol**, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."[1]

33. The account number is information capable of identifying Plaintiff as a debtor, and thus its disclosure has the potential to cause harm to a consumer and directly implicates and controverts individual privacy concerns which are a core concern animating the FDCPA.[2]

34. Defendants have violated section 1692f(8) of the FDCPA as to the Plaintiff and the members of the Class hereinafter defined, by disclosing the account, reference or registration number assigned to consumers through the envelope window.[3]

---

[1] 15 U.S.C. § 1692f(8) (emphasis added).
[2] 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.")
[3] *See DiNaples v. MRS BPO, LLC.,* 934 F.3d 275 (3d Cir. 2019); *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302, 306 (3d Cir. 2014); *Berry v. ARS Nat'l Servs.*, No. 15-1529, 2015 U.S. Dist. LEXIS 171043 (E.D. Pa. Dec. 23, 2015); *Palmer v. Credit Collection Servs.*, No. 15-1681, 2015 U.S. Dist. LEXIS 171039 (E.D. Pa. Dec. 22, 2015); *Link v. ARS Nat'l Servs.*, No. 15-643, 2015 U.S. Dist. LEXIS 164263 (W.D. Pa. Dec. 8, 2015); *Pirrone v. NCO Fin. Sys.*, No. 15-4000, 2015 U.S. Dist. LEXIS 163747 (E.D. Pa. Nov. 30, 2015); *Sungsoo Park v. ARS Nat'l Servs.*, No. 15-cv-02867-SDW-SCM, 2015 U.S. Dist. LEXIS 147171 (D.N.J. Oct. 30, 2015); *In re ACB Receivables Mgmt.*, No. 14-cv-6418-FLW-LHG, 2015 U.S. Dist. LEXIS 119812 (D.N.J. Sept. 9, 2015); *Kostik v. ARS Nat'l Servs.*, No. 3:14-CV-2466, 2015 U.S. Dist. LEXIS 95230 (M.D. Pa. July 22, 2015); *Styer v. Prof'l Med. Mgmt., Inc.*, 114 F. Supp. 3d 234 (M.D. Pa. 2015).

    **C.**    **Failure to Identify the Current Creditor**

35. The Letter refers the recipient to make a payment at www.acsca.com which is a website is associated with Defendant Allied.

36. However, the coupon portion of the Letter refers the recipient to make a payment to the Defendant Colclough, specifically to "The Law Offices of Robert J Colclough, III."

37. The Letter does not refer to Allied or use Allied's name. The Letter does not explain nor offer to identify Allied's involvement vis-à-vis the debt.

38. The two different payment methods referring to different payees referenced in the Letter would confuse the recipient as to whom payment should be sent, who actually owns the debt and how to make a payment towards the debt.

39. Although the Letter clearly identifies the "ORIGINAL CREDITOR" as "Northrop Grumman Federal Credit Union" this information does not assist the consumer on identifying the *current* creditor.

40. The Letter fails to identify the current creditor.

41. By failing to identify the current creditor, the Letter fails to disclose the identity of the "current creditor" as required by 15 U.S.C. § 1692g(a)(2).

42. By failing to identify the current creditor, the Letter leaves the least sophisticated consumer questioning the authenticity and legitimacy of this debt.

43. By failing to identify the current creditor, the Letter leaves the least sophisticated consumer unsure on how to properly direct payment towards in receipt of the letter.

    **D. Failure to Clearly State the Amount of the Debt**

44. The Letter states in part:

```
ORIGINAL CREDITOR :    A
AMOUNT :      $ 11832.14
INTEREST :    $ 372.79
TOTAL :       $ 12204.93
```

45. Upon information and belief, Defendants are not permitted to charge interest on the debt.

46. By stating that the "Amount" is $11,832.14, Plaintiff, as would the least sophisticated consumer, cannot know whether the current balance is $11,832.14 or $12,204.93.

47. Alternatively, it is Plaintiff's understanding and belief that, under the terms and conditions applicable to their use of the Account, interest, late charges, and other charges and fees (such as annual fees) could accrue.

48. Even the least sophisticated consumer would understand that credit card debt could accrue interest, late charges and other charges and fees (such as annual fees).

49. Nothing in the letter clarifies whether the Account is continuing to accrue interest, late charges and other charges and fees.

50. Neither the Plaintiff nor the least sophisticated consumer are required to remember past bills or compare and contrast Defendants' collection letter with past bills.

51. Even then, on information and belief, this is in the initial communication between Plaintiff and Defendants.

52. The Letter would reasonably lead the least sophisticated consumer to conclude that the balance is not static due to unspecified costs, such as interest but, instead, could increase. Not knowing whether the balance would increase materially affects the decision of the least sophisticated consumer whether to prioritize and pay this Debt because, with limited resources and the inability to pay all debts, such a consumer would rationally pay a debt with a balance that was increasing due to interest before paying an otherwise identical debt with a static balance.

53. Defendants failed to accurately state the amount of the Debt, and falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the amount owed to the creditor (who is not identified) would or could increase over time.

54. Further, the least sophisticated consumer would reasonably presume and understand that an account such as a Northrop Grumman Federal Credit Union account would, if not paid in full every month, accrue interest and may accrue late charges and other charges and fees. Thus, the least sophisticated consumer would believe the truth of (a) the statement in Defendant's collection letters that the stated balance was merely the balance as of the date of the respective collection letter, and (b) the implication that the amount due could or would increase if not promptly paid.

55. In fact, however, the balance of the Account could not increase and, even if it could increase, Defendants never intended to add, would not add, and did not add any lawful interest, late charges, or other fees and charges to increase the balance stated in Defendants' collection letters.

56. Defendants failed to accurately state the amount of the Debt, and falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the amount owed to the creditor would or could increase over time—indeed, that the amount owed had already changed by the time the collection letter was received days later.

57. Alternatively, the balance of the Account continued to accrue interest, albeit unlawfully. However, Defendants failed to disclose that the balance is continuing to accrue interest, costs, or fees in violation of the FDCPA.

### E. Lack of Meaningful Attorney Involvement

58. Upon information and belief, no one at The Law Offices of Robert J. Colclough, III, is licensed as an attorney in the Commonwealth of Pennsylvania.

59. To the least sophisticated consumer, the Letter falsely appeared to be from licensed attorneys and impliedly represented that a lawyer with the Colclough firm had personally reviewed the particular circumstances of the Debt (including a review of materials which would reasonably inform an attorney's opinion) and arrived at a professional opinion based on the lawyer's professional training and experience that stating the amount the debt was accurate, that interest was being lawful assessed, that the account was appropriate for "legal action", and that "reasonable attorneys fees" are permitted in Pennsylvania.

60. Upon information and belief, Defendants are not permitted to collect interest and attorney's fees.

61. Had the Letter in fact been mailed after a lawyer with the Colclough firm personally reviewed the particular circumstances of the Debt (including a review of materials which would reasonably inform an attorney's opinion), such lawyer could not have arrived at a professional opinion based on the lawyer's professional training and experience.

62. Therefore, the Letter was not the result of a lawyer's meaningful involvement and the Letter was not from an attorney in any meaningful sense of the term.

63. Indeed, the Letter explicitly states that "[t]his account has not yet been reviewed by an attorney."

64. On information and belief, the Letter is mass-produced, computer-generated form letter—that is, it was created by merging electronically-stored information about the Debt with

an electronically-stored template—that is mailed to consumers in Pennsylvania, such as Plaintiff, from whom Defendants were attempting to collect a debt.

65. On information and belief, the Letter was created, printed, and mailed either by Defendants' nonlawyer staff or by a letter-vendor hired by Colclough or Allied.

66. On information and belief, Defendants collectively implemented, oversaw, supervised, and approved of Colclough's policies and practices in which they mailed the same form letter as the Letter by merely relying "upon their client's certification of the 'validity' of the account" (including the Debt) without taking "responsibility for the reasonable accuracy of each letter" and without "exercising due care that no letter misstates a fact with respect to the account" (including the Debt). *Debt Collection Practices Reaffirming UPLC Opinion 8 and ACPE Opinions 259 and 506*, NJ Eth. Op. 48 (N.J.Adv.Comm.Prof.Eth.), 208 N.J.L.J. 710, 2012 WL 12303774, at *1 (quoting ABA Informal Ethics **Opinion** 1368, "Mass Mailing of Form Collection Letters" (July 15, 1976)).

67. On information and belief, by mailing form letters such as the Letter which falsely implied an attorney's meaningful involvement, including an attorney's approval that the Letter was accurate, Defendants falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the Letter was from an attorney and created a false impression as to the Letter's source.

68. All Defendants acted in concert in the attempt to collect the Debt from Plaintiff including the mailing of the Letter to her.

F. **False Threat of Credit Reporting, Interest, and Attorney's Fees**

69. The Letter specifies to the recipient that "[s]hould you wish to cease all further collection procedures, credit bureau reporting and **avoid possible legal action**, mail in the balance

due, or contact me immediately to discuss arrangements for payment or a possible settlement for this account." (emphasis in original)

70. The Letter specifically refers to reporting the Plaintiff to the credit bureaus in the active tense when suggesting that payment would "cease *all further* collection procedures, credit bureau reporting . . . . " (emphasis added in italics).

71. However, at the time the Letter was mailed, Defendants never reported or intended to report the Plaintiff to the credit bureaus.

72. Therefore, Defendants falsely, deceptively and misleadingly threatened the recipient that the debt was being reported to the credit bureau, and that payment would cease all further credit bureau reporting, when no such credit reporting was taking place.

73. Defendants falsely threatened to credit report when they never intended to do so.

74. Defendants unlawfully threatened interest by including the INTEREST : $ 372.79 line-item when Defendants are not permitted to charge interest.

75. Defendants falsely threatened attorney's fees when fees are not permitted in Pennsylvania.

### G. Overshadowing the Validation Notice

76. Additionally, by requesting immediate action including threatening unlawful interest, legal action, attorney's fees, and negative credit reporting, the language in the Letter overshadows the important statutory rights under sections 1692g(a)(3)-(5) (commonly referred to as the "Validation Notice").

77. Defendants demand the consumer to take immediate action in order to settle the debt and cease credit reporting, "[s]hould you wish to cease all further collection procedures, credit bureau reporting and **avoid possible legal action**, mail in the balance due, or *contact me*

*immediately to discuss arrangements* for payment or a possible settlement for this account." (emphasis added in italics).

78. By failing to effectually inform the least sophisticated consumer of their statutory rights, the Letter deprives the least sophisticated consumer of their statutory right to dispute and/or verify the debt.

79. Defendants' failure to effectually inform the least sophisticated consumer of their statutory rights is a false, deceptive, and misleading, which is in violation of the FDCPA.

80. Therefore, this language overshadows the Validation Notice and results in the consumers waiving or foregoing their opportunity to dispute the validity of the debt.

## V. POLICIES AND PRACTICES COMPLAINED OF

81. Defendants used the same procedures it used in sending the Letter to Plaintiff when sending the same and/or similar letters to numerous other Pennsylvania consumers.

82. It is Defendants' policy and practice to send written collection communications, in an attempt to collect consumer debts, which, *inter alia*, unlawfully exposed the recipients' sensitive account numbers to the public, which failed to identify the name of the current creditor, which falsely threatened and unlawfully charged interest (or, alternatively, which unlawfully suggests that interest would accrue when it does not), which was sent without meaningful attorney involvement, falsely representing that Defendants are "credit bureau reporting" when they are not, and overshadowed the Validation Notice.

## VI. CLASS ACTION ALLEGATIONS

83. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84. The debts alleged to be owed by Plaintiff and those similarly situated were incurred for personal, family or household purposes.

85. Subject to discovery and further investigation which may cause Plaintiff to expand restrict or otherwise modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class initially defined as follows:

> All natural persons with addresses within in the Commonwealth of Pennsylvania, to whom, beginning June 6, 2019, through and including the final resolution of this case, Defendants sent one or more letter(s) in attempts to collect a consumer debt.

86. Plaintiff seeks to recover statutory damages, attorney's fees and costs on behalf of all class members under the Fair Debt Collection Practices Act.

87. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

88. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals, including but not limited to:

   A. Whether Defendants are a debt collector under the FDCPA;

   B. Whether Defendants violated 15 U.S.C. § 1692e (including §§ 1692e(2), 1692e(3), 1692e(5), 1692e(8), and 1692e(10)), 15 U.S.C. § 1692f (including §§ 1692f(1) and 1692f(8)), and 15 U.S.C. § 1692g (including §§ 1692g(a)(1), 1692g(a)(2), and 1692g(b)).

   C. Whether Plaintiff and the Class are entitled to statutory damages.

89. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

90. Plaintiff's claims are typical of the claims of the members of the Class.

91. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

92. Plaintiff does not have interests antagonistic to those of the Class.

93. The Class, of which Plaintiff is a member, is readily identifiable.

94. Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling consumer class actions and other complex litigation, and claims of the type asserted in this action.

95. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

96. Plaintiff does not anticipate any difficulty in the management of this litigation.

**VII.    COUNT I – FAIR DEBT COLLECTION PRACTICES ACT**

97. Plaintiff, on behalf of herself and others similarly situated, reasserts and incorporates herein the allegations contained in the preceding and following paragraphs.

98. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

99. Plaintiff and those similarly situated are "consumers" as defined by 15 U.S.C. § 1692a(3) because they are natural persons allegedly obligated to pay a debt, in which the money, property, insurance, or services, which was the subject of the transaction, was primarily for personal, family and/or household purposes.

100. The Debt is a consumer "debt" as defined by 15 U.S.C. § 1692a(5).

101. The debts alleged to be owed by the Plaintiff and those similarly situated are consumer "debts" as defined by 15 U.S.C. § 1692a(5).

102. Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and the interpretations thereof.

103. The Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

104. The Letter is an "initial communication" as defined by 15 U.S.C. § 1692g.

105. The letters sent by Defendants to other Pennsylvania consumers are "communications" pursuant to 15 U.S.C. § 1692a(2).

106. The Letter was sent by Defendants to Plaintiff in an attempt to collect the Debt.

107. The letters were sent by Defendants to other Pennsylvania consumers in an attempt to collect the debts.

108. As described above, Defendants violated the FDCPA.

109. The violations of the FDCPA described herein constitute *per se* violations.

110. Based on any one or more of those violations, Defendants are liable to Plaintiff and those similarly situated for damages, attorney's fees and costs under 15 U.S.C. § 1692k.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Melana Findley, on behalf of herself and others similarly situated, demands judgment against Defendants The Law Offices of Robert J. Colclough, III;

Robert J. Colclough, III; Jorge De Leon; and Allied Collection Services of California, LLC, as follows:

    A.    For certification of this instant matter as a class action, appointing the named Plaintiff as representative of the Class, and appointing the attorneys of Kim Law Firm LLC and The DeLiberty Law Firm as class counsel;

    B.    For statutory damages in favor of Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) or, in the alternative, 15 U.S.C. § 1692k(a)(2)(A);

    C.    For statutory damages in favor of the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

    D.    For actual damages in favor of Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(1);

    E.    For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

    F.    For pre-judgment and post-judgment interest; and

    G.    For such other and further relief as the Court deems equitable and just.

## IX. JURY DEMAND

Plaintiff demands trial by jury as to all claims and defenses.

Dated: June 8, 2020

    KIM LAW FIRM LLC

    *s/Yongmoon Kim*
    Yongmoon Kim (Attorney ID: 328106)
    411 Hackensack Avenue, Suite 701
    Hackensack, New Jersey 07601
    Tel. & Fax (201) 273-7117
    ykim@kimlf.com

    THE DELIBERTY LAW FIRM

    *s/Daniel A. DeLiberty*
    Daniel A. DeLiberty (Attorney ID: 90578)
    2909 W. Chester Pike, Suite 100
    Broomall, Pennsylvania 19008
    (610) 353-0322

    *Attorneys for Plaintiff and the Proposed Class*